### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
#### Norfolk Division

**PENN-AMERICA INSURANCE CO.**

      **Plaintiff,**

**v.**                                          **Civil Action No.: 2:06cv119**

**APRIL DAWN MAPP and**
**ACH CORPORATION OF CHESAPEAKE, INC.**

      **Defendants.**

### OPINION & ORDER

This action for declaratory judgment requires the Court to determine Plaintiff Penn-America Insurance Co.'s ("Plaintiff") financial liability in contract for litigation costs and damages in a parallel personal injury matter pending in the Circuit Court of the City of Portsmouth ("State Court" or "State Court Proceeding").  Defendant April Dawn Mapp ("Ms. Mapp") is suing Defendant ACH Corporation of Chesapeake, Inc. ("ACH") for negligence in State Court.  ACH is the owner and operator of Three Cheers bar ("the bar").  Ms. Mapp alleges that ACH was negligent for failing to protect her from a known imminent danger; namely, an intoxicated patron who struck Ms. Mapp with his motorcycle in ACH's parking lot.  Plaintiff argues that its contract with ACH does not cover the claims brought against ACH in the present State Court action, and therefore Plaintiff would not be obligated to pay for any judgment or costs of litigation.  Doc. 1.  Plaintiff filed a Motion for Summary Judgment, and Defendants have filed Cross-Motions in which they ask this Court to find that Plaintiff has a duty to defend ACH against Ms. Mapp's claims in State Court.

At the hearing on these Motions, the parties agreed that the Court had authority to decide this matter on summary judgment because the parties are in agreement on all material facts. The Court will accordingly issue its decision based on the filings and argument before this Court.

The Court **FINDS** that: (1) jurisdiction is proper because the Court's decision will not impinge on the fact-finding of the jury in the parallel State Court Proceeding; (2) ACH's delay in providing notice to Plaintiff, was not material because the circumstances suggest that notice was not required immediately following the collision; (3) the liquor liability exclusion does not apply to Ms. Mapp's claims under a premises liability theory; (4) the Policy's punitive damage and limits of insurance provisions are clear and undisputed; and, (5) the facts are not ripe for the Court's decision on the matter of Plaintiff's duty to indemnify. Therefore, the Court **FINDS** that Plaintiff has a duty to defend ACH against Ms. Mapp's claims of premises liability.

## I. PROCEDURAL HISTORY

Plaintiff filed its Complaint on March 6, 2006. Doc. 1. ACH filed its Answer on April 4, 2006. Doc. 4. Ms. Mapp's Answer was filed on April 7, 2006. Doc. 6. Plaintiff filed the instant Motion for Summary Judgment (Doc. 9) and Memorandum of Support (Doc. 10) on September 21, 2006.

ACH filed its Motion for Summary Judgment (Doc. 16) and Memorandum in Support of Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 17) on October 4, 2006. On the same day, Ms. Mapp filed a Motion for Summary Judgment (Doc. 13) and Brief in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Her Counter-Motion for Summary Judgment (Doc. 14). On October 10, 2006, Plaintiff filed its Brief in Reply to Defendants' Memoranda in Opposition to Plaintiff's Motion

for Summary Judgment.  Doc. 18.  A separate Brief in Opposition to Defendants' Cross-Motion

for Summary Judgment was filed on October 18, 2006.  Doc. 20.

On October 19, 2006, Plaintiff filed its Statement of Undisputed Facts.  Doc. 21.  This

Statement mirrors the facts contained in Plaintiff's Motion for Summary Judgment.  Cf. Doc. 10

at 2-16; Doc. 21.  On October 20, 2006, ACH filed its Statement of Undisputed Facts,

referencing as undisputed those facts included in its Motion in Opposition to Plaintiff's Motion

for Summary Judgment and Cross-Motion for Summary Judgment.  Doc. 22 (facts 1-100 and

103-130 are undisputed; facts 101 and 102 are opinion, not fact).  At the hearing, held October

23, 2006, counsel for Ms. Mapp agreed to stipulate to those facts included in Plaintiff's

Statement of Undisputed Facts.

## II. FACTUAL BACKGROUND

On the evening of July 4, 2003, Mr. Bristol and a friend, Timothy Dodd ("Mr. Dodd"),

arrived at the bar on or about 9:30 p.m. by motorcycle.  Doc. 10, Ex. 1 (Dep. Dodd) at 6-8.

Several hours later, in the early morning hours of July 5, 2003, Ms. Mapp was struck by a

motorcycle driven by Joshua Bristol ("Mr. Bristol") in front of Three Cheers bar ("the bar") in

Portsmouth, Virginia.  Doc. 10 at 1.  The following is an account of the undisputed facts of that

evening.

### A. Events Surrounding the Collision

In anticipation of the bar's closing that evening, the disc jockey followed the usual

procedures and made the last call for alcohol fifteen (15) minutes before closing.  Doc. 10, Ex. 1

at 16; Ex. 5 (Dep. Jones) at 6; Ex. 6 (Dep. Hess) at 14; Ex. 7 (Dep. Ma. Fly) at 20.  The bar

closed at approximately 1:30 p.m. and the normal procedure was followed; all patrons were

asked to leave the bar and were not let back in.  Doc. 10, Ex. 2 at 11; Ex. 5 at 6; Ex. 6 at 15.

Upon exiting the bar, Mr. Bristol and Mr. Dodd were approached by three women who asked for rides on their motorcycles.  Doc. 10, Ex. 1 at 20.  These three women were Deborah Marie Fly ("Marie Fly"), Michelle Fly, and Ms. Mapp.  Doc. 10, Ex. 7 at 21.  Mr. Dodd declined the request, but Mr. Bristol agreed to give the women rides.  Id. at 20.

Accounts of the accident confirm that when Mr. Bristol was giving Marie Fly a ride on his motorcycle, he rode through the parking lot in a weaving, looping, and curling fashion.  Doc. 10, Ex. 7 at 29-34, 44-45.  When approaching the front of the bar, Mr. Bristol drove so fast that Marie Fly grew nervous.  Id. at 33.  Mr. Bristol then briefly stopped the motorcycle before he "floored it," driving straight ahead along the driveway between the parking lot and the bar in the direction of the crowd of approximately fifteen (15) to twenty (20) people that had just exited the bar.  Id. at 35, 37-38, 45; Ex. 6 at 17.  Mr. Bristol is estimated by witnesses to have been traveling between fifteen (15) and fifty (50) miles per hour in the parking lot.  Doc. 10, Ex. 1 at 24 (15-20 m.p.h.); Ex. 6 at 16-17 (50 m.p.h.); Ex. 10 (Dep. Jen Hess) at 9.

Accounts illustrate that Mr. Bristol first hit Ms. Mapp, then traveled a distance further before he and Marie Fly fell to the ground.  Doc. 10, Ex. 1 at 24-26, 49; Ex. 2 at 14-16, 25; Ex. 6 at 8, 12, 20; Ex. 7 at 39.  Ms. Mapp was seriously injured and does not remember any of the events of that evening, beyond going to the bar that night.  Doc. 1, Ex. 1 ¶ 17; Doc. 10 at ; Ex. 9 (Dep. Mapp) at 8,11-12.

## B. Mr. Bristol's Intoxication

The Court does not have to decide the extent of Mr. Bristol's intoxication, or whether his intoxication was a proximate cause of Ms. Mapp's injuries, at this stage of the proceedings.

However, the Court notes that the parties have stipulated that Mr. Bristol had not had anything to drink before he arrived at the bar, that he had at least four (4) to five (5) drinks at the bar, that he appeared intoxicated after the collision, and that a blood test taken after the accident shows that his blood contained a blood alcohol concentration of 0.11% by weight by volume. See Doc. 10 at 5, 12; Doc. 10 at 9-10; Doc. 1, Ex. 2 (Dep. DaSilva) at 6-7; Doc. 10, Ex. 3 (Dep. Mi. Fly) at 9; Doc. 10, Ex. 13 (Dep. Doyle) at 11-12. Mr. Bristol further admits to drinking and driving on the night of the collision.[1]

### C. State Court Proceedings

Due to her injuries, Ms. Mapp filed a Motion for Judgment in the Circuit Court of the City of Portsmouth ("State Court Proceeding"), alleging negligent, gross, deliberate, and wanton conduct on the part of ACH. Doc. 1, Ex. 1 (Mapp Motion for Judgment) ¶¶ 15, 16. Ms. Mapp alleged that ACH's employees and agents sold alcohol to Mr. Bristol throughout the evening of July 4, 2003, rendering him intoxicated beyond a point where he could lawfully operate a motor vehicle. Id. ¶¶ 5, 6. She further alleged that ACH's employees and agents did so with notice that he would unlawfully operate a motor vehicle on its premises, and that ACH had "actual and constructive knowledge of an imminent probability of harm created thereby to its business invitees," including Ms. Mapp. Id. ¶ 12. Finally, by virtue of its notice and knowledge of this imminent probability of harm, Ms. Mapp claimed that ACH owed her, as an invitee, a duty of care to warn and protect her from imminent harm, but that no action was taken to protect or warn

---

[1]In Mr. Bristol's sworn statement made at the sentencing hearing held after his criminal trial on March 18, 2004, he stated: "I'm sorry. . . . The decision I made to drink and drive, I know it was a poor decision, worse that poor. . . . Initially I denied the accident because I was drinking and driving, that it would have happened if I wasn't drinking and driving. I came to realize that I'm sure it would have been a lot different outcome if I was sober, and drinking and driving does make you impaired. . . ." Doc. 10, Ex. 11 at 10, ex. 43 pp. 18-21.

Ms. Mapp.  Id. ¶¶ 13, 14.  Thus, Ms. Mapp alleged that ACH, its agents and employees,

"negligently and with . . . indifference to its duty . . . disregard[ed] the safety of . . . Ms. Mapp,"

leading to her being "struck and run down by Bristol," from which she suffered severe and

permanent injury.  Id. ¶¶ 15-17.

Ms. Mapp seeks compensatory damages of $7.5 million and punitive damages of $2.5

million.  Id. at ad damnum.  On April 4, 2006, the State Court partially granted ACH's demurrer

for any claims based on "dram shop" liability[2] or liability otherwise attributed to ACH for simply

serving alcohol, because the Commonwealth of Virginia does not recognize "dram shop"

liability against the seller of alcoholic beverages to third parties for actions of intoxicated

tortfeasors.  Doc. 10, Ex. 28 (Amended Order of the Circuit Court of Portsmouth).  ACH's

demurrer to all other claims was denied.  Id.

### D. Notice of Claim to Plaintiff Penn-America

ACH was a named insured under Penn-America commercial general liability policy

number PAC 6283033 with a coverage period from February 1, 2003 to February 1, 2004 ("the

Policy").  Doc. 10, Ex. 19 (Aff. Sorge) ¶ 3, ex. 1 (ACH Answer ¶¶ 16, 19).  Charles Huneycutt,

owner of ACH at the time of the collision, received notice of the incident from his brother,

Richard Huneycutt, that day, July 5, 2003.  Doc. 10, Ex. 4 at 10.  Richard related to Charles the

circumstances of the accident, and that Ms. Mapp "was not in good shape" and "appeared to be

hurt pretty bad."  Id. at 10-11.

Charles Huneycutt alerted Plaintiff of the incident on June 29, 2005.  Id. at 21.  This is

---

[2]Dram shop liability is the legal responsibility imposed upon "a vendor of alcoholic beverages for injuries suffered as a result of the intoxication of the vendor's patron." Williamson v. Old Brogue, Inc., 232 Va. 350, 352-53 (1986).

two (2) days after ACH received service of process in the State Court Proceeding.  Doc. 14, Ex. 2 (Sorge Dep.) at 10.  When he contacted Plaintiff, Charles Huneycutt was aware that a criminal action arose from the incident, and stated that he assumed that a lawsuit would have been filed against Mr. Bristol; however, he asserted that he believed the bar would not be responsible because the collision occurred thirty (30) minutes after the bar closed.  Id. at 35-36.  He also stated that he did not think he had any obligation to maintain the parking lot area.[3]  Id. at 14.

Charles Huneycutt concedes that the incident was ultimately not reported to Plaintiff until almost two (2) years after the event took place.  Id. at 21.  The collision occurred on July 5, 2003, and was reported to Plaintiff by fax of Ms. Mapp's Motion for Judgment on June 29, 2005.  Doc. 10, Ex. 19 ¶ 4, ex. 2.

### E. Plaintiff Penn-America's Interest in the State Court Litigation

On July 14, 2005, Plaintiff sent a letter to Charles Huneycutt at ACH stating that it would defend ACH on all claims contained in Ms. Mapp's Motion for Judgment.  Doc. 10, Ex. 9, ex. 3. It was expressly stated, however, that this obligation was

> subject to a complete reservation of its rights to later disclaim coverage and seek reimbursement of any costs or fees incurred in the defense of ACH Corporation of Chesapeake, Inc. for which Penn-America had no duty to defend under its policy.  You have the right to accept or reject this offer of defense under a reservation of rights. The bases pursuant to which this reservation of rights is issued are set forth below.

Id.  The letter also listed the provisions of the policy that Plaintiff presently relies upon in seeking declaratory judgment.  Id.; see infra II(F).

### F. Policy Language

---

[3]At the hearing, the parties stipulated that the parking lot was not owned by ACH.

Plaintiff relies on four provisions of the Policy in seeking declaratory judgment.  These provisions govern (1) notice, (2) liquor liability, (3) punitive damages, and (4) the limits of insurance.  Doc. 10 at 14-16.

Notice: The relevant provisions of the Policy governing notice include:

**2. Duties In The Event Of Occurrence, Offense, Claim or Suit**
a. You must see to it that we are notified as soon as practicable of any "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:
(1) How, when and where the "occurrence" or offense took place;
(2) The names and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
b. If a claim is made or "suit" is brought against any insured, you must:
(1) Immediately record the specifics of the claim or "suit" and the date received; and
(2) Notify us as soon as practicable.

Doc. 1, Ex. 2 (Policy) at 11.

Liquor Liability Exclusion: The relevant provisions governing liquor liability include:

**2. Exclusions**
This insurance does not apply to:
**\*\*\***
**c. Liquor Liability**
"Bodily injury" or "property damage" for which any insured may be held liable by reason of:
(1) Causing or contributing to the intoxication of any person;
(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
(3) Any statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Id. at 2.

Punitive Damages Exclusion: The relevant provisions state, in pertinent part: "It is part of

-8-

the condition of this policy that the Company shall not be liable for any damages awarded

against an insured as punitive or exemplary damages." Id. (Combined Provisions Endorsement).

Limits of Insurance: The relevant provisions governing limits of insurance state: "Finally,

the limits of insurance stated in the Policy are $500,000.00 per occurrence and $1,000,000.00 in

the aggregate." Id. (Declarations Page).

III. STANDARD OF REVIEW

**A. Summary Judgment**

Although this case comes before the Court on summary judgment, the parties have

agreed that there are no material facts in dispute, and that there are no additional facts which

either party wishes to proffer to the Court.  Accordingly, the Court will decide the issues before

it on the basis of the facts in the Record on which the parties have agreed.  In effect, the Court

will make its factual findings in the same manner as if the issues were before it at a bench trial.

In this Opinion, the Court will nonetheless refer to the Cross-Motions for Summary Judgment

that are before it.

**B. Policy Interpretation**

"The question of whether a writing is ambiguous is a question of law" for the Court.

Riverton Investment Corp. v. United States, 170 F. Supp. 2d 608, 613 (W.D. Va. 2001) (citing

Tuomala v. Regent Univ., 252 Va. 368 (1996)).  When the language of an insurance policy is

clear and unambiguous, courts must give the language its plain and ordinary meaning and

enforce the policy as written.  Transcontinental Ins. Co. v. RBMW, Inc., 262 Va. 502, 512, 551

(Va. 2001); Schneider v. Continental Cas. Co., 989 F.2d 728, 733 (4th Cir. 1993).  "[I]t is not a

court's function to make a new contract for the parties different from that plainly intended and

thus create a liability not assumed by the insurer." <u>Fed. Ins. Co. v. New Coal Co.</u>, 415 F. Supp.

2d 647, 651 (W.D. Va. 2006) (citing <u>Blue Cross & Blue Shield v. Keller</u>, 248 Va. 618 (Va.

1994)) (internal quotations omitted).

IV. D<small>ISCUSSION</small>

In its Motion for Summary Judgment, Plaintiff contends that ACH does not meet, or has

otherwise failed to comply with, the terms of its contract, including (1) the provisions requiring

notification of events that may result in a claim, (2) exclusion of insurance coverage for liquor

liability, (3) punitive damage limitation, and (4) the limits of insurance.  Doc. 10.

In her Memorandum in Opposition and Cross-Motion for Summary Judgment, Ms.

Mapp asserts that (1) the Court should decline to exercise jurisdiction in this matter because of

the parallel State Court Proceeding; (2) if the Court decides to move forward, the Plaintiff's

Motion should be denied, and Ms. Mapp's granted, because her claims are not covered by the

liquor liability exclusion; and, (3) Plaintiff cannot show that ACH breached its duty to timely

notify Plaintiff of an occurrence that might lead to a claim, because ACH notified Plaintiff when

it was aware of a claim, had no other indication that one might be filed, and Plaintiff was not

prejudiced by any delay.  Doc. 14 at 24-25.

ACH's Memorandum in Support claims that its Cross-Motion for Summary Judgment

should be granted—and Plaintiff's Motion denied—because (1) the factual allegations contained

in ACH's Memorandum of Support are not excluded by the Policy's liquor liability provision;

(2) the alleged failure of ACH to give timely notice does not absolve Plaintiff of its duty to

defend because the failure was not material since it was objectively reasonable; and, (3) the

Court should deny Plaintiff's Motion as it applies to Plaintiff's duty to indemnify, because

additional findings of fact must be made by the jury in the underlying State Court Proceeding. Doc. 17 at 20.

Both defendants concede that the Policy is clear with regard to punitive damages and limits on the Policy's coverage; therefore, Plaintiff's final two claims are not in dispute.  <u>See</u> Doc. 14 at 9; Doc. 17 at 20.

Arguments on the issues raised by the parties will be addressed in turn.

### A. Jurisdiction

Ms. Mapp asserts that proper jurisdiction for this matter is with the Circuit Court of the City of Portsmouth, where the parallel tort suit is currently pending.  Doc. 14 at 10; <u>see</u> Doc. 10, Ex. 28.  Quoting <u>Fidelity & Guaranty Ins. Underwriters, Inc. v. Holt</u>, Ms. Mapp argues that declaratory judgment in the present matter would be imprudent; that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  2 F. Supp. 2d 798, 802 (E.D.Va. 1998) (citing <u>Aetna Casualty & Surety Co. v. Quarles</u>, 92 F.2d 321, 325 (4th Cir. 1934) ("It is well settled that the declaratory remedy should not be invoked merely to try issues or determine the validity of defenses in pending cases.").

### 1. Standard of Review

Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and FED. R. CIV. P. 57, federal courts have discretion to decline to exercise jurisdiction over a declaratory judgment action.  <u>Pennsylvania Nat. Mut. Ins. Co. v. Ely Wall & Ceilings, Inc.</u>, 2006 WL 569589, *1 (D.S.C., March 6, 2006) (unreported).  Specifically, the Act provides in part: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

The Supreme Court of the United States has "repeatedly characterized the Declaratory Judgment

Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right

upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (emphasis added)

(quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)).  This

discretion is not boundless, however, as a district court "may not refuse to entertain a declaratory

judgment action out of 'whim or personal disinclination, but may do so only for good reason.'"

Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (citations

omitted).

Exercise of this discretion requires that courts weigh "considerations of federalism,

efficiency, and comity." New Wellington Financial Corp. v. Flagship Resort Development

Corp., 416 F.3d 290, 297 (4th Cir. 2005) (citations omitted).  In support of this idea, the Supreme

Court has noted that "[o]rdinarily it would be uneconomical as well as vexatious for a federal

court to proceed in a declaratory judgment suit where another suit is pending in a state court

presenting the same issues, not governed by federal law, between the same parties.  Gratuitous

interference with the orderly and comprehensive disposition of a state court litigation should be

avoided." Brillhart v. Excess Ins. Co., 316 U.S. 491, 494-95 (1942).

To determine whether the Court should entertain jurisdiction in the present matter, the

court must look to: (1) the strength of the state interest in deciding this issue in state court; (2)

whether this federal action may be more efficiently resolved in the underlying state action; (3)

whether permitting the federal action to proceed would result in unnecessary entanglement

between the federal and state systems, because of the presence of overlapping issues of fact or law; and, (4) whether the federal action is merely "procedural fencing."  Penn-America Ins. Co. v. Coffey, 368 F.3d 409 (4th Cir.  2004) (quoting Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d at 271, 377 (4th Cir. 1994) (the "Nautilus factors")).

### 2. Discussion

Applying the four Nautilus factors, it is first important to note that Virginia law governs the present diversity action between a Pennsylvania plaintiff and two Virginia Defendants.  Doc. 1 ¶¶ 1-3.  The Commonwealth of Virginia thus has a relatively strong interest.

Second, the underlying state action may be more efficiently resolved in State Court, because Defendants have been litigating their case there for over a year and ACH has objected to mediation pending a decision by this Court.  However, were this Court to dismiss the federal declaratory judgment action it would not serve judicial efficiency, because the coverage issues could not be litigated as part of the State Court tort action.

The third, and perhaps the most difficult issue, is whether substantially similar facts are at issue before the state and federal courts.  If the facts were the same, then this Court would risk intruding on the fact-finding function of the State Court jury.  The controlling law for determining whether the facts of a case would so intertwine the state and federal court proceedings as to require, under Nautilus, that the case be dismissed in favor of the state court, was articulated in the recent case of  Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 413 (4th Cir. 2004).[4]  In Coffey, a case factually similar to the instant matter, the United States Court of

---

[4]Two courts applying Virginia law have cited to Coffey.  The Fourth Circuit in New Wellington Financial Corp. v. Flagship Resort Development Corp., decided that dismissal was proper but did not reach the third prong of the Nautilus factors.  416 F.3d 290, 297 (4th Cir. 2005).  The Court, in Great American Ins. Co. v. Gross, found that the factual issues created such

Appeals for the Fourth Circuit held that dismissal in favor of state court was not necessary even though the federal court's interpretation of the insurance policy at issue required it to analyze causation. Id. The Court found that Virginia law required only that the federal court rely on the complaint in the underlying state court proceeding to make its findings of fact: "Under Virginia law, an insurer's duty to defend arises 'whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy. . . . [Therefore,] there is no duty to defend 'if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations." Id. (emphasis added) (citation omitted). This Court thus need not dismiss this matter in favor of the State Court; it may decide this declaratory judgment matter by assuming the factual allegations in Ms. Mapp's Motion for Judgment (Doc. 1, ex. 1) to be true and applying these facts in interpreting the Policy.

Fourth, to determine whether the purpose of filing the action in federal court is "procedural fencing," the Court must assess whether "the action is merely the product of forum-shopping." Id. at 412. Ms. Mapp concludes that the action is the product of procedural fencing, but fails to allege facts sufficient to support this conclusion. See Doc. 14 at 11. While Plaintiff's expansion of this litigation into federal court may increase the costs and delay of the State Court Proceeding, in the absence of argument on this prong the Court cannot find as a matter of law that this is a substantial danger in this case.

Though some arguments weigh in favor of dismissal, this Court is accustomed to applying Virginia law in declaratory judgment actions. Further, the Court may appropriately

---

a risk of entanglement under prong three that dismissal in favor of the state court was required; however, it did not rely on Coffey in support of his decision. 2005 WL 2009284, *7 (E.D. Va., Aug. 19, 2005) (unpublished). Therefore, the Court is making its decision under facts distinguishable from the cited precedent.

exercise jurisdiction and avoid entanglement with the fact-finding analysis of the State Court, by

relying only on Ms. Mapp's Motion for Judgment.  Cf. Coffey, 368 F.3d at 413.  The Court may

therefore properly exercise jurisdiction in the present case without substantially interfering with

the State Court Proceedings.  Ms. Mapp's claim that this Court lacks jurisdiction is **DENIED**.

## B. Notice Provision

The parties agree on the substantive facts regarding notice; however, they disagree as to

whether ACH's delay was material and whether it was reasonable in notifying Plaintiff when it

did—that is, after service of process almost two years later, and not immediately after the

collision.

### 1. Standard of Review

Whether ACH was able to meet the terms of the notice provision of the Policy hinges on

the meaning of the term "as soon as practicable."  As an initial matter, "insurance policy

provisions which require notice of an accident 'as soon as practicable' are considered reasonable

and enforceable."[5]  Atlas Insurance Co. v. Chapman, 888 F. Supp. 742, 745 (E.D. Va. 1995)

(citing State Farm v. Mutual Ins. Co. v. Porter, 221 Va. 592, 597 (1980).  "Moreover, an

---

[5]

> The rationale behind the rule requiring compliance with the notice
> provision is compelling.  Absent the requirement of prompt notice by
> the insured of all accidents and occurrences which could implicate
> the policy, the insurer is at the mercy of its insured's willingness to
> reveal such potential claims.  As the Virginia Supreme Court has
> made plain, notice provisions are designed to afford the insurer the
> opportunity to make a timely investigation of all circumstances
> surrounding the accident and to prepare an adequate defense if
> necessary on behalf of the insured.

Chapman, 888 F. Supp. at 745 (citing North River Ins. Co. v. Gourdine, 205 Va. 57, 62 (1964)).

insured's substantial compliance with these notice provisions is a <u>condition precedent to recovery</u> under the policy." <u>Id.</u> (citing <u>Liberty Mut. Ins. v. Safeco Ins. Co.</u>, 223 Va. 317, 323 (1982); <u>State Farm Fire & Cas. Co. v. Walton</u>, 244 Va. 498, 504 (1992)) (emphasis added).

Virginia law does not require that an insurance company be prejudiced by the delay in notification; a prolonged delay in notification alone may breach the policy even absent a showing of prejudice.[6] <u>State Farm Fire & Cas. Co. v. Walton</u>, 244 Va. 498, 504 (1992). However, in order for untimely notification to constitute a breach of the policy, such that the insurer no longer bears the duty to defend the insured, the failure to notify must be substantial and material. <u>State Farm Mut. Auto. Ins. Co. v. Porter</u>, 272 S.E.2d 196, 199 (Va.1980). There are three factors that bear upon the materiality of such a breach: (1) the reasonableness of the delayed notice, (2) the amount of prejudice suffered by the insurer as a result of the delay, and (3) the length of time that elapsed before notice was given. <u>North River Ins. Co. v. Gourdine</u>, 135 S.E.2d 120, 124 (Va.1964); <u>Walton</u>, 244 Va. at 504.

In determining the reasonableness of an insurer's notice, the Virginia Supreme Court follows an objective standard, requiring that an insurer be notified whenever it should reasonably appear to the insured that the policy may be implicated. <u>Dan River Inc. v. Commercial Union Ins. Co.</u>, 227 Va. 485, 489 (1984). Failure to give timely notice will not be excused when the

_____

[6]Defendants go into significant discussion of the fact that Plaintiff was not prejudiced. <u>See</u> Doc. 14 at 17-21; Doc. 17 at 17-18. ACH and Ms. Mapp make strong arguments showing that the Portsmouth Police Department did a thorough job conducting the investigation, and that Plaintiff has sufficient information to make an accurate coverage decision and to defend its insured, furthermore Plaintiff does not contend that it was in any way prejudiced by ACH's delay in notification. <u>See</u> Doc. 14 at 18-20; Doc. 14, Ex. 1 (Sorge Dep.) at 8; Doc. 17 at 17-18. Accordingly, the Court finds that Plaintiff was not prejudiced by ACH's delay of notification. The Court will consider the absence of prejudice in this case as it is relevant to a determination of the materiality of ACH's delay in providing notice.

insured subjectively concludes that coverage under the policy will not be implicated or is ignorant of the notice provisions. Chapman, 888 F. Supp. at 742. Rather, an "occurrence" giving rise to the obligation to notify has been interpreted by the Virginia Supreme Court to mean an "incident which was sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages covered by the policy." Walton, 244 Va. at 503.

"Generally, whether notice has been given to the insurer 'as soon as practicable' is an issue to be resolved by a fact finder." State Farm Fire and Cas. Co. v. Scott, 236 Va. 116, 120 (1988). However, in this case the judge is the finder of fact and the parties have agreed that there is no material fact in dispute. Accordingly, the notice issue is ripe for decision upon pre-trial motion. First, the undisputed facts show that the insurer was not prejudiced by the delay. Second, while that delay was substantial it was not material. Accordingly, the court may find that the insurer maintains its responsibilities under the policy. See Porter, 272 S.E.2d at 199 (Va.1980).

*2. Discussion*

Plaintiff contends that because ACH waited for nearly two (2) years following the collision to notify it of the occurrence, the mere lapse of time alone establishes a substantial and material breach of the notice provision, as illustrated by Virginia caselaw.[7]  Doc. 10 at 19-23.

---

[7]Virginia court decisions providing examples of when delayed notice voided the policy include: when notice was given one hundred and twenty-six (126) days after the occurrence (Chapman, 888 F. Supp. at 748); one hundred and seventy-three (173) days after the occurrence (Lord v. State Farm Mutual Automobile Ins. Co., 224 Va. 283, 288 (1982)); over two (2) years after the occurrence (Walton, 244 Va. at 500-01); and nearly three (3) years after the occurrence (Vermont Mutual Insurance Co. v. Everette, 875 F. Supp. 1181, 1187 (E.D. Va. 1995)). In each of the above four cases, the court found, as a matter of law, that such delay of notification constituted a substantial and material breach of the notice requirement that it precluded the

While the lapse of time was substantial, it was not necessarily material.  The Court must therefore determine whether ACH's delay in notifying Plaintiff of the collision was material.

In support of their arguments that the delay was not material, Defendants ACH and Ms. Mapp cite the circumstances surrounding the accident and ACH's prior dealings with Plaintiff. Significantly, Ms. Mapp argues that ACH was not notified of any claim prior to service of process, that the collision occurred in the bar's parking lot after the bar had closed, and that ACH notified Plaintiff shortly after receiving service of process.  Doc. 14 at 16-17.

ACH further contends that Plaintiff, in a prior event where a patron was injured in the bar's parking lot in an incident involving one of ACH's employees, did not require notification at the time of the event, but rather notification upon service of process.[8]  Doc. 17 at 15-17.  ACH thus argues that Plaintiff established a manner of dealing with ACH for events occurring in its parking lots, and is now estopped from asserting a different interpretation of the Policy's notice provision.  Id. at 16 (citing Hathanic Trust & Security Co. v. Girard Fire & Marine Ins. Co., 156 Va. 15, 22 (1931) ("When the insurer has acted in such a way as to give the insured reason to believe that some known right under the policy would be insisted upon, and the insured has acted upon that belief, the insurer will be estopped to give the lie to his conduct, and claim that right to

_____

insured from coverage under the policy.  See Chapman, 888 F. Supp. at 747; Everette, 875 F. Supp. at 1188; Lord, 224 Va. at 288; Walton, 244 Va. at 505.

[8]On November 11, 2003, an incident occurred in the parking lot outside the bar, where a patron was allegedly injured by a bar employee.  Doc. 17, Ex. C (Charles Belch Aff.) ¶ 2.  ACH did not notify Plaintiff of the incident.  Id. at ¶ 3.  Plaintiff was notified of a possible claim against ACH on December 23, 2003, ostensibly by a third party.  Id. at ¶ 4.  On July 27, 2004, the injured patron filed an action against ACH in the Portsmouth Circuit Court.  Id. at ¶ 5.  On August 26, 2004, Plaintiff agreed to defend ACH in the lawsuit arising out of this incident, but asserted that the claim may be barred by the assault and battery exclusion.  Id. at ¶ 6.  Plaintiff never raised ACH's failure to provide it notice of the occurrence underlying the claim as a defense to coverage.  Id. at ¶ 7.

the prejudice of the insured."); <u>American Hardware Mut. Ins. Co. v. BIM, Inc.</u>, 888 F.2d 132

(4th Cir. 1989) (waivers of conditions precedent to coverage may be implied from the conduct of

a party).

ACH's estoppel argument is problematic in the circumstances of this case because the

November 11, 2003 incident arose over four (4) months after the collision in the present matter

occurred.  Further, Penn-America asserts that notice was not an issue in that matter because

notice was timely received just over one (1) month after the incident.

 In considering the three factors which <u>Gourdine</u> holds to bear on materiality, the Court

finds that an analysis of these factors show that: (1) ACH's notice was reasonable in light of the

circumstances of the collision, including the fact that the collision occurred after the bar had

closed, in a parking lot not owned by ACH, and in spite of immediate criminal action against the

driver based on intoxication, no claim was made against ACH by Ms. Mapp until suit was filed

almost two (2) years later; and, (2) that there was admittedly no prejudice to the insurer.  <u>See</u>

<u>Gourdine</u>, 135 S.E.2d at 124; <u>see</u> <u>Norfolk & W.R. Co.</u>, 796 F. Supp. at 928.  While the third

factor, the length of the delay was substantial when measured from the date of the occurrence, it

was given only two (2) days after ACH's first notice of any claim by Ms. Mapp.[9]  Accordingly,

---

[9]The Court has found four Virginia cases which substantially discuss the issue of
reasonableness in an insured's failure to give notice of an occurrence that might give rise to a
claim.  While none of these mirror the facts of the present matter, it is important to note that
though each of the courts listed below determined that delay was unreasonable, thereby finding
that insurer was not obligated to fulfill its obligations under the contract, the reasons for so
finding are distinguishable from the present matter in important ways.  <u>See</u> <u>State Farm Fire &
Cas. Co. v. Walton</u>, 244 Va. 498 (1992) (court concluded as a matter of law that a two year delay
of notification, in light of the fact that the <u>insured had been told by an attorney following the
occurrence to notify</u> the carrier of its homeowner insurance policy, was a substantial and
material breach) (emphasis added); <u>Aetna Cas. and Sur. Co. v. Jett</u>, 52 F.3d 320, 1995 WL
238565 (4th Cir. 1995) (unpublished) (finding that because the <u>insurer suffered significant
prejudice</u>, delay was unreasonable) (emphasis added); <u>Dan River, Inc. v. Commercial Union Ins.</u>

the Court **GRANTS** Ms. Mapp and ACH's Motion in part, **FINDING** that ACH's delay in

giving notice was not material and does not void the Policy.

### C. Liquor Liability Exclusion

The determination of the liquor liability exclusion's applicability requires this Court to

find whether Ms. Mapp has alleged a course of action against ACH independent of so-called

"dram shop" liability.  Such a determination is based solely on the facts alleged in Ms. Mapp's

Motion for Judgment in the underlying State Court Proceeding.  See Coffey, 368 F.3d at 413.

Accordingly, the crux of this Court's inquiry on summary judgment is only whether the Motion

for Judgment alleges facts sufficient to establish a claim not included in the liquor liability

exclusion.

*1. Standard of Review*

a. Liquor Liability Exclusion

The Virginia Supreme Court has not yet had the opportunity to interpret the scope of an

insurance policy's liquor liability exclusion in this precise context.  This Court, however, may

interpret the law as it forecasts that the Virginia Supreme Court would rule on the law and facts

---

Co., 227 Va. 485 (1984) (though insured employer was aware of complaints of racial
discrimination filed against it at the Equal Employment Opportunity Commission, the
"occurrence" triggering the notice provision did not arise until suit was filed against the insured;
nevertheless, insured's failure to notify insurer for seven (7) years after filing of suit was
unreasonably untimely notice) (emphasis added); Atlas Ins. Co. v. Chapman, 888 F.Supp. 742,
746 (E.D. Va. 1995) (finding as a matter of law that "the four month delay in notifying the
insurer, without any excuse or sufficient justification, constitutes a substantial and material
breach of the notice provision, which is a condition precedent to coverage.") (emphasis added).
Distinct from these cases, in the present matter ACH has a valid excuse for delay, the Plaintiff
did not suffer prejudice as a result of any delay, and ACH notified Plaintiff as soon as it
was given notice of Ms. Mapp's claims against it.  Thus, the facts in light of the caselaw support a
finding that ACH was indeed reasonable in its delay, and for these reasons the delay was not
material.

now before the Court.  See Ball v. Joy Mfg. Co., 755 F. Supp. 1344, 1350 (S.D. W.Va. 1990) ("It

is elementary that in a United States District Court when acting with diversity jurisdiction must

follow the settled law of the state in which it sits.  Where such law is unclear or unsettled, a

district court must faithfully predict how the highest court of such state would rule if the case

were before it.") (citations omitted); Wilson v. Ford Motor Co., 656 F.2d 960, 960 (4th Cir.

1981); Graves v. Associated Transport, Inc., 344 F.2d 894, 897 (4th Cir. 1965).[10]

Many courts have interpreted the viability of liquor liability exclusions nearly identical in

form and language to the exclusion at issue in the present Policy, finding them valid and

unambiguous.[11]  Courts evaluating what claims fall within the liquor liability exclusion have

focused on the existence of a "causal link"; that is, whether the claims asserted are dependent

and arise from the sale and service of alcohol.  Federated Mut. Ins. Co. v. Piedmont Petroleum

Corp., 444 S.E.2d 532, 533 (1994) ("There is no real distinction between 'arising out of' and 'by

reason of'" for purposes of determining the degree of causation covered by liquor liability

exclusion.); McPherson v. Michigan Mutual Insurance Co., 426 S.E.2d 770 (1993).  Only those

claims "which have a direct nexus to the sale or service of alcohol or the causing or contributing

-----

[10]Alternatively, this Court could certify this issue to the Virginia Supreme Court
requesting its guidance.  The length of time that the parallel personal injury case has been
pending, and the fact that only the duty to defend and not indemnity is ripe for decision at this
time mitigate against requesting such guidance.

[11]See Williams v. U.S. Fidelity and Guar. Co., 854 F.2d 106 (5th Cir.1988); Hartford Ins.
Co. of Southeast v. Franklin, 206 Ga. App. 193 (1992); Morrison on Behalf of Morrison v.
Miller, 452 So.2d 390 (La.Ct.App.1984); Mitcheson v. Izdepski, 585 N.E.2d 743 (Mass. 1992);
Sheffield Ins. Co. v. Lighthouse Properties, Inc., 763 P.2d 669 (Mont. 1988); New Hampshire
Ins. Co. v. Hillwinds Inn, Inc., 373 A.2d 354 (N.H. 1977); U.S. Fidelity and Guar. v. Griggs, 341
491 A.2d 267 (Pa. 1985); Abe's Colony Club, Inc. v. C & W Underwriters, Inc., 852 S.W.2d 86
(Tx. Ct. App.1993); Fraternal Order of Eagles Cle Elum, Aerie No. 649 v. General Accident Ins.
Co. of America, 792 P.2d 178 (Wash. 1990); Kelly v. Painter, 504 S.E.2d 171 (W.Va. 1998).

to any person's intoxication are barred by the Liquor Liability Exclusion." Capitol Indemnity

Corp. v. Blazer, 51 F. Supp. 2d 1080, 1088 (D. Nev. 1999); see Three Sons, Inc. v. The Phoenix

Insurance Co., 357 Mass. 271, 275 (1970).  "By reason of" in an insurance policy has been

interpreted to require "a direct causal relation" between the fact of liability and the violation of a

statute, an analysis approximating a "but-for" causation test.  Pacific Ins. Co., Ltd. v. Eaton

Vance Mgmt., 369 F.3d 584, 589 (2004).

### b. Duty to Defend

If an insurance policy is susceptible to two constructions, one of which would effectuate

coverage and the other would not, it is to be construed liberally in favor of the insured and

strictly against the insurer.  Sur. Corp. v. Elder, 204 Va. 192, 198 (1993) (citation omitted); see

also Donnelly v. Transp. Ins. Co., 589 F.2d 761, 767 (4th Cir. 1978) (if a complaint, however

ambiguous, may be read as premising liability on alternative grounds, and either ground states

liability potentially or arguably covered by the policy, the insured is entitled to a

defense)(emphasis added).  "[A]n insurer is excused from its duty to defend the insured only

where the complaint against the insured clearly demonstrates no basis upon which the insurer

could be required to indemnify the insured under the policy."  Fuisz v. Selective Ins. Co. of Am.,

61 F.3d 238, 242 (4th Cir. 1995); Travelers Indem. Co. v. Obenshain, 219 Va. 44, 46, 245 S.E.2d

247, 249 (1978) ("The insurer is relieved of a duty to defend only when it clearly appears from

the initial pleading the insurer would not be liable under the policy for any judgment based upon

the allegations.") (emphasis in original); J.A.J., Inc. v. The Aetna Casualty and Surety Co., 529

A.2d 806, 808 (Me. 1987) (An insurance company is obligated to defend an action against the

insured where a mere "potential for liability within the coverage appeared from the allegations

made" by the injured party.).

In determining whether an insurance company has a duty to defend the insured, the court must apply the "eight corners" rule.  See America Online, Inc. v. St. Paul Mercury Ins. Co., 207 F. Supp. 2d 459, 465 (E.D. Va. 2002) (citing Town Crier, Inc. v. Hume, 721 F. Supp. 99, 102 (E.D. Va. 1989).  The court must review the policy language to determine the terms of the coverage at issue and compare it with the allegations in the underlying lawsuit to determine whether any of the claims asserted are covered by the policy.  Fuisz, 61 F.3d at 242.  The "eight corners" rule is a combination of the Exclusive Pleading Rule and the Potentiality Rule. America Online, Inc., 207 F. Supp. 2d at 465.  "Under the Exclusive Pleading Rule, 'an insurer's duty to defend is determined solely by the allegations in the pleading.'"  Id.  "The Potentiality Rule extends the Exclusive Pleading Rule to require the insurer to defend if there is the potential that the 'claim, as stated in the pleadings, could be covered by the policy.'"  Id.  As the Fourth Circuit noted in Donnelly, the duty to defend is triggered when the underlying complaint alleges liability that "potentially or arguably" is covered by the policy.  Donnelly, 589 F.2d at 767.

### c. Premises Liability Claim

Virginia law recognizes a narrow exception to the rule that a premises owner is not responsible for the conduct of third persons.  In order to fall into the exception, an injured party must establish, first, that there is a special relationship between either the injured party and the defendant or the third party.  Yuzefovsky v. St. John's Apartments, 261 Va. 97, 107 (2001). Secondly, the injured party must show that this special relationship gives rise to a duty of care to warn and/or protect her "as a result of the particular circumstances of that special relationship, including the known or reasonably foreseeable danger of harm to the plaintiff from the criminal

life of the third party." Id. Virginia recognizes a "special relationship" between a business proprietor and its invitee. See, e.g., Gupton v. Quicke, 247 Va. 362, 364 (1994) (holding that a bar has a special relationship with its patrons to protect them from the violent acts of fellow patrons where the bar employees allowed the violent employee to reenter the bar though they were aware of his violent behavior).

Plaintiff also alleges premises liability based upon the duty to warn its invitees of a known dangerous condition upon the premises.

### 2. Discussion

The State Court dismissed any claims that arise out of dram shop liability—that is, liability based on the sale of alcohol. Doc. 10, Ex. 28. The State Court did not, however, dismiss Ms. Mapp's other claims; specifically, the allegation contained in her Motion for Judgment that ACH breached its duty to her under a premises liability theory. See id.; Doc. 1, Ex. 1.

Based on the facts contained in her Motion for Judgment, Ms. Mapp has alleged sufficient facts to satisfy Virginia's exception to the general rule that a premises owner does not owe a duty of care to protect patrons from third-party assaults, as well as a duty to warn.[12] Ms. Mapp alleges that she had a special relationship with ACH by virtue of her being an invitee on ACH's premises. Doc. 1, Ex. 1 ¶ 4. Moreover, Mapp alleges that ACH and/or its employees knew that Bristol was driving his motorcycle in a reckless manner during the evening. Id. at ¶ ¶

---

[12]Plaintiff argues that Ms. Mapp is simply trying to allege a premises liability claim in order to circumvent the Policy's exclusion for liquor liability, and that may be the case. However, the fact that Ms. Mapp is attempting to do so does not mean that this Court should find, at this stage of the proceeding, whether Ms. Mapp may succeed on such a claim. The validity of Ms. Mapp's premises liability claim, including causation, in a finding for the State Court to make.

7, 10.  These facts, if proven at trial, could subject ACH to liability under the special relationship exemption to Virginia premises liability law.  In fact, the trial court has already made this very ruling on ACH's demurrer.  Doc. 10, Ex. 28.  By overruling the demurrer, the trial court has determined that if Ms. Mapp has alleged facts that, if true, would show that ACH was negligent for failing to warn or to protect Ms. Mapp from Bristol's actions.

Because the proper role of this Court is not to determine whether Ms. Mapp will ultimately prevail on her Motion for Judgment, only that her pleadings, "if proved, would fall within the risk covered by the policy," the Court finds that Ms. Mapp's Motion for Judgment states a claim for premises liability, not covered by the liquor liability exclusion.  Brenner v. Lawyers Title Ins. Co., 240 Va. 185, 189 (1990); see Fuisz, 61 F.3d at 242 (4th Cir. 1995).

Accordingly, the Court finds that Plaintiff has a duty to defend this action because the allegations fall within it's Policy with ACH.  Plaintiff's Motion on this issue is **DENIED**, and this Court **GRANTS** Ms. Mapp and ACH's Cross-Motions for Summary Judgment in part **FINDING** that Plaintiff has a duty to defend ACH.  The issue of Plaintiff's duty to indemnify ACH, should it be found liable to Ms. Mapp, is not ripe for decision by this Court.

### D. Punitive Damages

The Policy expressly states that punitive damage awards are not covered, and that Plaintiff is thus not liable for payment of any punitive damages awarded against ACH.  Doc. 1, Ex. 2 (Combined Provisions Endorsement).  This qualification is clear and unambiguous, and ACH concedes that the Policy does not cover punitive damages.  Doc. 17 at 2.  Therefore, the Court **FINDS** that Plaintiff is not liable for any punitive damages awarded by the Circuit Court for the City of Portsmouth to Ms. Mapp against ACH.  The Court accordingly **GRANTS**

Plaintiff's Motion, in part, in regards to punitive damages.

### E. Limits of Insurance

The Policy limits coverage for claims against its insured to $500,000 per occurrence, or $1 million in the aggregate. Id. (Policy Declarations Page). This condition is also clear and unambiguous. ACH further concedes that Plaintiff would not be liable for any monetary judgment in excess of the Policy limits. Doc. 17 at 2. The Court, therefore, **FINDS** that, to the extent ACH may be found liable to Ms. Mapp, Plaintiff is not liable for any award in excess of the limits provided in this clause. The Court accordingly **GRANTS** Plaintiff's Motion, in part, in regards to the limits of insurance provision.

### F. Duty to Indemnify

Though resolution of the duty to defend requires the Court to analyze the facts alleged in Ms. Mapp's Motion for Judgment, the resolution of the duty to indemnify "will depend on the resolution [in State Court] of facts alleged" in the same Motion for Judgment. Coffey, 368 F.3d 409, 413 (4th Cir. 2004) (emphasis added) ("Although an insurer's duty to indemnify will depend on resolution of facts alleged in the complaint, no such fact-finding is necessary if there is no duty to defend because the allegations, even when taken as proved, would fall outside the policy's coverage."). It is only when there is no duty to defend based on those same factual allegations that a reviewing court on a declaratory judgment action can make a factual determination that there is no duty to indemnify prior to a decision upon the merits of the underlying claim. See Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 189 (1990) ("insurer's obligation to defend is broader than its obligation to pay"); Anthem Cas. Inc. Group Affirmative Ins. Co. v. Roberts, 49 Va. Cir. 154, 155 (Roanoke City 1999) ("[a] decision

concerning the insurer's contractual obligation to indemnify its insured for a judgment arising

out of the personal injury case is premature.  It will depend upon whether a jury renders a verdict

against the defendant, and, if so, whether that verdict is for an intentional tort or a negligent

tort.").

Because the factual allegations in the underlying State Court Proceeding, if proven,

may give rise to a duty to indemnify, only after the State Court has made its decision will this

Court be in a position to evaluate whether or not Plaintiff has a duty to indemnify.  The Court

thus **FINDS** that it is premature to rule upon Plaintiff's duty to indemnify.

### V. Conclusion

The Court **FINDS** that jurisdiction in this matter is proper because it need not make

findings of fact in resolving Plaintiff's duty to defend that would otherwise be made in the

pending State Court proceeding.

The Court **GRANTS** Defendants' Cross-Motions for Summary Judgment in part

with regard to the notice provision.  The Court **FINDS** that ACH's delayed notice was not

material.

The Court further **GRANTS** Defendants' Cross-Motions for Summary Judgment in

part as they apply to the duty to defend.  The Court **FINDS** that Ms. Mapp's Motion for

Judgment adequately alleges a claim not covered by the liquor liability exclusion—namely,

premises liability—giving rise to Plaintiff's duty to defend.

The Court **GRANTS** Plaintiff's Motion for Summary Judgment as to the final two

provisions relevant to this action—the punitive damage provision and the limits of insurance

provision—because Plaintiff's interpretation is correct and has not been disputed by the

Defendants.  Under the punitive damage clause, the Court **FINDS** Plaintiff is not liable for any claims for punitive damages asserted by Ms. Mapp.  Under the liability limits, the Court **FINDS** Plaintiff's liability capped at $500,000 per occurrence, or $1 million in the aggregate, thus restricting Ms. Mapp's recovery from Plaintiff at $500,000 in the State Court action.

The Court **FINDS** that a decision on Plaintiff's duty to indemnify should be withheld until the State Court reaches its decision on the merits.

The Court **ORDERS** that this case be dismissed from its active docket and it may be reinstated upon proper motion by any party to this proceeding.

It is so **ORDERED**.


                                                        /s/
                                    _____
                                            *HENRY COKE MORGAN, JR.*
                                    SENIOR UNITED STATES DISTRICT JUDGE




Norfolk, Virginia
November 17,  2006